UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARK A. TRAVIS, )<br>)<br>Defendant. ) | Case No. 1:22-CR-100-SNLJ-ACL |

## REPORT AND RECOMMENDATION

Currently before the Court is Defendant Mark A. Travis' Motion to Dismiss Indictment.[1] (Docs. 38, 42, 46.) The Government opposes the Motion. (Doc. 42.)

I.   Background

Travis was indicted on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a firearm by an unlawful user of a controlled substance under 18 U.S.C. § 922(g)(3). Following a traffic stop on June 17, 2022, Travis admitted he'd been using marijuana every other day for approximately a decade to help him relax. He further admitted possessing a pistol he was carrying at the time of the traffic stop for approximately two years although he was a convicted felon. Travis now moves to dismiss the Indictment.

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

II. The Motion

Travis raises a facial challenge to the constitutionality of §§ 922(g)(1) and (g)(3), arguing that the Supreme Court's decision in *New York Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022), renders the statutes incompatible with the Second Amendment right to bear arms.

As to Count I, Travis argues that "[n]o Circuit's previous Second Amendment precedent survived *Bruen*" (Doc. 41 at 5- 7); "the historical test [discussed in *Bruen*] focuses on regulations in place at the time of the Second Amendment's ratification," *id*. at 7-8; and Travis is among the people protected by the Second Amendment, *id*. at 11-15. He further argues that the Government cannot "show that § 922(g)(1) is 'consistent with the Nation's historical tradition of firearm regulation." *Id*. at 17-33. In the event the statute is constitutional, Travis asserts a separate as-applied challenge to Count I "out of an abundance of caution." *Id.* at 34-36. He "asserts that a facial and as-applied challenge to § 922(g)(1) are effectively one and the same under *Bruen*."

Regarding Count II, Travis claims that the government cannot show that "§ 922(g)(3) is 'consistent with the Nation's historical tradition of firearm regulation." (Doc. 42 at 1-4.) Travis then argues that "even if § 922(g)(3) is not facially unconstitutional, it is unconstitutional as applied to [him]." *Id*. at 4-5. He again comments that "facial and as-applied challenge[s] to § 922(g)([3]) are effectively one and the same under *Bruen*." *Id*. at 4. Travis further argues that "[t]here will be no evidence that he was using marijuana at the time of his possession of the firearm. The firearm was found in a backpack in the rear of the vehicle. This country has not traditionally denied someone the right to possession of a firearm while not under the influence of an intoxicant." *Id*. at 5.

The Government opposes Travis' request for dismissal and interprets *Bruen* as requiring courts to "first consider whether 'the Second Amendment's plain text covers an individual's conduct,'" and if it does, "then 'the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.'" (Doc. 46 at 4.) Next, the Government argues that "Travis's conduct – either as a convicted felon possessing a firearm or as an unlawful user of controlled substances possessing a firearm is not covered by the Second Amendment." *Id*. at 4-9. Additionally, the Government avers that "[t]he Supreme Court's decision in *Bruen* did not invalidate the prohibition against being a felon in possession of a firearm." *Id*. at 9-14. As to Count II, the Government claims that "[t]he prohibition against unlawful users of controlled substances bearing arms is constitutional even in light of *Bruen*. *Id*. at 16-27. Finally, the Government argues that "[s]ection 922(g)(3) is not unconstitutional as applied to Travis." *Id*. at 27-29.

Based on the analysis below, it is recommended that Travis' request for dismissal of the Indictment as 1) facially unconstitutional be denied and his 2) vague as-applied challenges be held in abeyance until trial.

III.   Legal Analysis

The Second Amendment states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, the Supreme Court decided whether a law of the District of Columbia—which banned all handguns and required long-arms to be kept in an inoperable state within the home—impermissibly infringed on the right to keep and bear arms. 554 U.S. 570, 573 (2008). The Court held that the Second Amendment protects the "individual

right to possess a firearm . . . and to use that arm for traditionally lawful purposes . . . ." *Id.* at 577.  But like most rights in the Constitution, "the right secured by the Second Amendment is not unlimited." *Id.* at 626.  *Heller* recognized that this Amendment "conferred an individual right to keep and bear arms." *Id*. at 595.  After recognizing the individual right at the heart of the Second Amendment, the Court struck down the challenged law of the District of Columbia, finding that it deprived Heller of his individual right to keep a handgun at home for self-defense.  *Id.* at 636.

In *McDonald v. City of Chicago*, the Court held "that the Due Process clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." 561 U.S. 742 at 791 (majority opinion) (2010). The Court emphasized that while *Heller* struck "down a law that prohibited the possession of handguns in the home," it "recognized that the right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner and for whatever purpose.'"  *Id*. at 786 (quoting *Heller*, 554 U.S. at 626).  *McDonald* reiterated that the holding in *Heller* "did not cast doubt" on "longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of firearms.'" *Id.* (quoting *Heller*, 554 U.S. at 626–27).  In so doing, the Court struck down Chicago's municipal code that, much like D.C. in *Heller*, effectively banned handgun possession by almost all city residents.  *Id.* at 750.

In *Bruen*, the Court considered whether New York's state licensing law, which allowed an applicant to obtain a license to carry a firearm outside the home only by proving that "proper cause exists," 142 S. Ct. at 2123, deprived two "law-abiding, adult citizens," *id.* at 2125, of

their right to carry a handgun for self-defense outside the home. New York courts interpreted "proper cause" to mean that an applicant must show a "special need for self-protection distinguishable from that of the general community." *Id.* (quoting *In re Klenosky*, 428 N.Y.S.2d 256, 257 (N.Y. App. Div. 1980)). This was a "demanding" standard that gave licensing officers great discretion in deciding who could exercise constitutional rights, in contrast to "shall issue" jurisdictions "where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Id.*

*Bruen* explained that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2129–30. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). *Bruen* "decided[d] nothing about *who* may lawfully possess a firearm." *Id.* at 2157 (Alito, J., concurring) (emphasis added).

The Supreme Court's holdings in *Bruen* did not overturn *Heller* wherein the Court recognized the importance of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627 (citations omitted). *Bruen*, *Heller*, and *McDonald* dealt with "how and why the regulations [at issue] burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133. Notably, the petitioners and respondents in *Bruen* agreed that just as *Heller* and *McDonald* recognized "that the Second and Fourteenth Amendments protect the right of *an ordinary, law-abiding citizen* to possess a

handgun in the home for self-defense[,]" such individuals "have a similar right to carry handguns publicly for their self-defense." *Id*. at 2122 (emphasis added.)

*III.A.   Facial Challenges*

The Eighth Circuit engaged in a thorough discussion of how *Bruen* should be applied when there is a facial challenge to a regulation under the Second Amendment in *United States v. Sitladeen*, 64 F.4th 978 (8th Cir. 2023).  The *Sitladeen* panel observed that "*Bruen* does not address the meaning of 'the people,' much less the constitutionality of criminal firearm statutes like § 922(g)(5)," *id*. at 984, which prohibits any alien who is unlawfully present in the United States from possessing a firearm.  *Sitladeen* noted that *Bruen* "clarified how a court must assess a Second Amendment challenge in general," *id*., as follows:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Bruen*, 142 S.Ct. at 2126 (internal quotation marks omitted).  *Sitladeen* then commented that *Bruen* repudiates means-end scrutiny employed by our sister circuits.  64 F.4th at 984 (referencing *United States v. Perez*, 6 F.4th 448, 453 (2d Cir. 2021), *cert. denied*, 142 S.Ct. 1133 (2022); *United States v. Torres*, 911 F.3rd 1253, 1257 (9th 2019); *United States v. Huirton-Guizar*, 678 F.3d 1164, 1169 (10th Cir. 2012)).

"Following *Bruen*, instead of analyzing 'how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right,' a court must begin by asking *whether the firearm regulation at issue governs conduct that falls within the plain*

*text of the Second Amendment.*" *Id*. at 985 (quoting *Bruen*, 142 S.Ct. at 2126) (emphasis added). *Sitladeen* examined this question:

> If the regulation does govern such conduct, the court will uphold it so long as the government can "identify an American tradition justifying" the regulation. *Id*. at 2138. For the government to make this showing, it need not point to a "historical *twin*," but only an analogous, i.e., "relevantly similar," historical regulation that imposed "a comparable burden on the right of armed self-defense" and that was "comparably justified." *Id*. at 2132-33. Nevertheless, *Bruen* cautions that "not all history is created equal." *Id*. at 2136. Because "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*," regulations in effect at or near the time of the Second Amendment's ratification carry more weight in the analysis than those that existed long before or after that period. *Id*.

*Id*. (quoting *Bruen* as cited and emphasis added in original).

To assess a facial challenge to a regulation under the Second Amendment, the first question is "whether [the statute] governs conduct that falls within the plain text of the Second Amendment." *Id*. (quoting *Bruen*, 142 S.Ct. at 2126). *Sitladeen* instructs that "[o]nly if the answer is yes do we proceed to ask whether [the statute] fits within America's historical tradition of firearm regulation. [ ]" *Id*. (quoting *Bruen*, 142 S.Ct. at 2126).

Shortly after *Heller* and *McDonald* were decided, the Eighth Circuit definitively held that 18 U.S.C. § 922(g)(3) was constitutionally valid in that "§ 922(g)(3) is the type of 'longstanding prohibition[ ] on the possession of firearms' that *Heller* declared presumptively lawful." *Seay v. United States*, 620 F.3d 919, 925 (8th Cir. 2010) (quoting *Heller*, 554 U.S. at 626). *Seay* also concluded that Congress, in passing § 922(g)(3), "expressed its intention to 'keep firearms out of the possession of drug abusers, a dangerous class of individuals.'" *Id.* (quoting *United States v. Cheeseman*, 600 F.3d 270, 280 (3d Cir. 2010)). The Eighth Circuit surveyed other courts that had considered the constitutionality of § 922(g)(3) under the Second

Amendment and upheld it. *Id*. at 924-25. It also found that "§ 922(g)(3) has the same historical pedigree as other portions of § 922(g)(3) which are repeatedly upheld by numerous courts since *Heller*." *Id*. at 925. Ultimately, *Seay* held that "§ 922(g)(3) is the type of 'longstanding prohibition[ ] on the possession of firearms' that *Heller* declared presumptively lawful." *Id*. (alteration in original) (quoting *Heller*, 554 U.S. at 626). *See also United States v. Walker*, No. 8:22-CR-291, 2023 WL 3932224, at *4 (D.Neb., Jun. 9, 2023) (district court denied facial challenge to § 922(g)(3) under the Second Amendment and held in abeyance as-applied void-for-vagueness challenges to § 922(g)(3) under the Second Amendment).

In *United States v. Bena*, the Eighth Circuit recognized that *Heller* did not articulate the "analytical basis for the presumptive constitutionality" for prohibitions on firearm possession. 664 F.3d 1180, 1182 (8th Cir. 2011). That said, it commented, "but we know at least that 'statutory prohibitions on the possession of weapons by some persons are proper,' and 'exclusions need not mirror limits that were on the books in 1791.'" *Id*. (quoting *United States v. Skoien*, 614 F.3d 638, 640-41 (7th Cir. 2010)). *Bena* then discussed the Nation's history relative to "the concept of a right to arms" dating back to "[p]roposals from the Founding period." *Id*. at 1182-84.

Recently, in *United States v. Jackson*, the Eighth Circuit explained that the *Bruen* decision did not cast doubt on *Heller*'s and *McDonald*'s statements that longstanding prohibitions on possession of firearms by certain persons, such as by felons, are presumptively valid. 69 F.4th 495, 501–02 (8th Cir. 2023). *Jackson* confirmed that this Nation's history shows Congress has the authority to "prohibit possession of firearms by persons who have demonstrated disrespect for legal norms of society," and who are not law-abiding citizens. *Id.* at 504 (upholding constitutionality of statute prohibiting felons from

possessing firearms, 18 U.S.C. § 922(g)(1)). Congress, in passing the Omnibus Crime Control and Safe Streets Act of 1968, prohibited "categories of presumptively dangerous persons from transporting or receiving firearms," and that determination was "not unreasonable." *Id.* at 504–05 (citations omitted).  "[L]egislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms" regardless of whether "those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness." *Id.* at 505–06.  Indeed, the Omnibus Crime Control Act, including § 922(g)(3), was partially aimed at preventing "narcotics addicts" from possessing firearms. *See id.* at 504 (quoting Pub. L. No. 90-351, § 901(a)(1), (2), 82 Stat. 225, 225).

According to *Seay*, the conduct regulated by § 922(g)(3) was not protected by the plain text of the Second Amendment.  "[T]he Eighth Circuit in *Seay* properly applied the 'test that [the Supreme Court] set forth in *Heller*,' which the Supreme Court also employed in *Bruen*." *Walker*, 2023 WL 3932224, at *4 (quoting *Bruen*, 142 S.Ct. at 2131).  Absent the Eighth Circuit itself finding that *Bruen* overturned its holding in *Seay*, this Court must treat *Seay* as binding precedent.  *Hood v. United States*, 342 F.3d 861, 864 (8th Cir. 2003).  Additionally, "when the Supreme Court issues an opinion with reasoning that appears to undercut an earlier decision, lower courts must continue to apply the earlier ruling in factual contexts analogous to the earlier case until such time that the Supreme Court itself overturns the earlier case." *United States v. Cavanaugh*, 643 F.3d 592, 606 (8th Cir. 2011).  *See also Gilpin v. United States*, No. 22-04158-CV-C-RK-P, 2023 WL 387049, at *4 (W.D. Mo. Jan. 3, 2023) (rejecting a post-*Bruen* challenge to § 922(g)(3), finding that *Bruen* did not overturn binding precedent in *Seay*).

The Eighth Circuit resolved an "as-applied" challenge from an individual charged under § 922(g)(1) in *Jackson*. In so doing, it also:

> conclude[d] that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons.

69 F.4th at 505. Thus, post-*Bruen*, the Eighth Circuit maintains that § 922(g)(1) remains constitutionally valid.

Similarly, the conclusory paragraph by the *Bruen* majority "repeated that the right to keep and bear arms belonged to 'law-abiding citizens with ordinary self-defense needs.'" *Bruen*, 142 S.Ct. at 2156. Justice Kavanaugh in his concurring opinion reiterated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* at 2162 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626) (alteration in original). Thus, *Bruen* should not be seen as overruling or even upsetting the holdings and reasoning of *Heller* and *McDonald*, but instead "charts the same course" as those earlier precedents. *Id.* at 2131–32.

Based on the foregoing, Travis' facial challenges to the constitutionality of §§ 922(g)(1) and (g)(3) should be denied.

## III.B.  As-Applied Challenges

Out of an abundance of caution, Travis argues that §§ 922(g)(1) and (g)(3) are unconstitutionally vague as applied to him while opining that facial and as-applied challenges in this context are effectively one and the same under *Bruen*.

"A criminal statute is unconstitutionally vague in violation of the Fifth Amendment due process clause if it 'fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement.'" *United States v. Turner*, 842 F.3d 602 (8th Cir. 2016) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)).  For Travis to prevail on his claims that §§ 922(g)(1) and (g)(3) are unconstitutionally vague, he must "show that the statute is vague as applied to his particular conduct," not that the statute is vague as applied to the conduct of others.  *United States v. Bramer*, 832 F.3d 908, 909 (8th Cir. 2016) (citing *United States v. Cook*, 782 F.3d 983, 987 (8th Cir. 2015)).  "The phrase 'unlawful user of . . . any controlled substance' in 18 U.S.C. § 922(g)(3) is not defined by statute and 'runs the risk of being unconstitutionally vague without a judicially-created temporal nexus between the gun possession and *regular drug use*.'" *Turner*, 842 F.3d at 605 (quoting *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003)) (emphasis in original).  *But see United States v. Daniels*, 77 F.4th 337, 350 (5th Cir. 2023) (The Fifth Circuit Court of Appeals granted a defendant's as-applied challenge to § 922(g)(3) finding that the statute failed the history and tradition standard in *Bruen*.)

To rule on either of Travis' as-applied challenges, would require examining the "facts surrounding the commission of the alleged offense[s]," which means the contested defense can only be ruled on with a "trial on the merits." *United States v. Carnes*, 22 F.4th 743, 748 (8th Cir. 2022) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)).

Though mentioned by neither party, *Turner* held that Federal Rule of Criminal Procedure 12 prohibits the undersigned from ruling on the merits of this motion because that would require making factual findings concerning issues that are "bound up with the evidence about the alleged offense[s themselves]."  842 F.3d at 605 (quoting *United States v. Grimmett*,

Page **11** of 13

150 F.3d 958, 962 (8th Cir. 1998)). As to § 922(g)(1), Travis must establish (1) that the Second Amendment protects his particular conduct, and (2) that his prior felony conviction[s are] insufficient to justify the challenged regulation of Second Amendment rights." *United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019). Regarding the as-applied challenge to § 922(g)(3), this Court must determine "whether [Travis] had engaged in 'regular drug use' at the time he possessed the firearm." *Turner*, 842 F.3d at 605. Indeed, both parties presented facts related to Travis' possession of the firearm in question to resolve the Motion.

Pretrial motions should be ruled on unless there is "good cause to defer a ruling." Fed.R.Crim.P. 12(d). "Good cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that 'fall[ ] within the province of the ultimate finder of fact.'" *Turner*, 842 F.3d at 605 (citations omitted).

Travis' as-applied challenges must await presentation of evidence at trial. Until that time, this Court's ruling on the issue should be held in abeyance.

IV.   Conclusion

Presently, Travis' facial attacks on the constitutionality of 18 U.S.C. §§ 922(g)(1) and (g)(3) are foreclosed by Supreme Court and Eighth Circuit precedent. His as-applied challenges should be deferred until trial because they require fact-finding left to the province of a jury.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Travis' Motion to Dismiss the Indictment (Doc. 38) as facially unconstitutional be **denied**; and that his as-applied challenges to §§ 922(g)(1) and (g)(3) be **held in abeyance until trial**.

Further, the parties are advised that they have until not later than October 20, 2023, in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 6th day of October, 2023.

                                             s/*Abbie Crites-Leoni*
                                             ABBIE CRITES-LEONI
                                             UNITED STATES MAGISTRATE JUDGE