```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                        SOUTHEASTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22 CR 100 SNLJ (ACL) |
| | ) |
| MARK A. TRAVIS, | ) |
| | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

Currently before the Court is Defendant Mark A. Travis' Motion to Suppress Evidence and Statements.[1] (Docs. 37, 54, 61.) The Government opposes the Motion. (Docs. 44, 60.)

The Defendant, Mark A. Travis, was a passenger in a truck that was stopped in a high crime area for having a headlight out. The driver indicated that he and Travis had travelled from Arkansas so the driver could buy a vehicle in Cape Girardeau that he found on Facebook. The officer who made the stop asked the driver to step out of the vehicle at which time the officer observed marijuana on the driver's shirt. When asked if the driver had any marijuana, the driver admitted he had smoked marijuana earlier that day, however, stated that he did not have any marijuana with him. The officer searched the vehicle and found a marijuana grinder in the backseat that belonged to the driver. He also found a marijuana "roach" on the front passenger floorboard, plus a backpack containing Travis' wallet and

---

[1] Pretrial matters have been referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

driver's license, another marijuana grinder, a small quantity of marijuana, a loaded nine-millimeter pistol, and other items.  Travis later made incriminating statements.

Travis claims that the officer did not have probable cause to search the vehicle or his backpack.  He "challenges the credibility of the officer's testimony regarding the presence of 'bits of marijuana' on [the driver's] shirt." (Doc. 37 at 4.)  Additionally, Travis claims that his admissions following the stop are "fruit of the poisonous tree" and must be suppressed.

The Government responded that "under the totality of the circumstances, the officer reasonably believed that there were items subject to seizure located in the vehicle." (Doc. 44 at 4.)

Cape Girardeau County Sheriff's Deputies Todd Stevens and Brian Eggers testified for the Government, and Kiefer Atwood testified for the defense.

In consideration of the pleadings and evidence submitted by the parties along with the testimony[2] presented, the undersigned recommends that the following findings of fact and conclusions of law be adopted, and that the Defendant's Motion to Suppress be denied.

## I.  Findings of Fact

On June 17, 2022, Deputy Stevens was patrolling Cape Girardeau County Roads 643 and 645.  Deputy Stevens has approximately 30 years of experience as a law enforcement officer, including 22 or 23 years with the Cape Girardeau County Sheriff's Department.  In Stevens' experience there was a lot of drug crime in that area.  He

---

[2] *See* Hearing Transcript, Doc. 51, referred to herein as "Tr."

estimated that he had conducted more than 100 traffic stops in the vicinity wherein evidence of illegal drugs was located, and the majority involved marijuana.

Shortly after midnight, Deputy Stevens observed a truck with Arkansas license plates that had only one operable headlight. He conducted a traffic stop. There were two occupants in the vehicle, the driver who was identified as Kiefer Atwood, and a passenger, later identified as the Defendant Mark Travis. Stevens asked Atwood to step out of the truck to speak with him and Atwood complied.

When Atwood stepped out, Deputy Stevens "noticed that [Atwood] had bits, flakes of marijuana on his shirt." (Tr. 10.) Stevens could clearly see Atwood, as the scene was illuminated by the police car's spotlight and Steven's flashlight. Stevens did not notice an odor of marijuana.

Deputy Stevens has had numerous trainings on marijuana and other drugs as well as drug interdiction training. Stevens has also seen marijuana while on the job "hundreds" of times. (Tr. 11.) He indicated that finding small particles of marijuana, where people have been using or transporting marijuana in a vehicle is "pretty prevalent." (Tr. 12.) Stevens explained that "it's usually common when somebody is inside their vehicle and they're either smoking and rolling up either a marijuana cigarette or a marijuana cigar." *Id*. Stevens noted that he had seen small particles of marijuana on people's clothes more than a hundred times.

After seeing the marijuana particles, Stevens testified "I informed Atwood that I saw the marijuana on his shirt, asked him if he had any marijuana. [Atwood] admitted to smoking it earlier that evening but did not have any more with him." (Tr. 13.) Stevens testified that Atwood's admission that he had smoked marijuana earlier was consistent with

his observation of small flakes of marijuana on his clothes.

Atwood told Deputy Stevens that he had $3,000 and that he had come to the area to buy a car.  It was after midnight and past the typical time for car shopping, plus Stevens was aware that drug activity occurred in that area late in the evening.  Stevens also knew that various items of drug paraphernalia, like rolling papers, pipes, cigarillos, and marijuana grinders, which produce small flakes of marijuana are commonly found in connection with marijuana use.  Furthermore, he knew that such items were illegal to possess when used to process or use marijuana.

Deputy Stevens reported that of the traffic stops wherein he observed small particles of marijuana, he located other items of contraband in the majority of those stops. Based on his training, experience in that geographic area, as well as his observations and Atwood's admission that he had used marijuana earlier, Stevens concluded that it was likely other items of contraband would be found in the truck.

Next, Deputy Stevens asked Travis to get out of the truck.  Travis was initially resistant, but eventually complied with the request.  A pat-down search revealed that Travis did not have any contraband on his person.  Both Atwood and Travis were handcuffed for Deputy Stevens' safety.  They stood in front of the truck while the search was completed.

The search of the vehicle resulted in Deputy Stevens finding a marijuana "roach" on the front passenger floorboard, a marijuana grinder on the back seat, and a black Nike backpack.  The backpack contained a wallet with Travis' Arkansas driver's license in it, a fully loaded nine-millimeter pistol, a partial box of nine-millimeter ammunition, and a second marijuana grinder with a small baggie containing marijuana.  Stevens also found a platter

decorated with phrases referencing marijuana use, plus a package of "Hemparillos" that are used to make blunts. All items were seized. Atwood and Travis were arrested on misdemeanor charges. A later criminal history check revealed that Travis was a convicted felon and prohibited from possessing firearms.

Deputy Brian Eggers testified that he has 28 years of law enforcement experience, and that he interviewed Travis at the Sheriff's Department later that day. Eggers testified that Travis was oriented as to time and place, did not appear ill or under the influence of drugs or alcohol, and they had no problems in understanding each other. No one made any threats or promises to Travis to get him to make a statement. Eggers read Travis his *Miranda* rights, which Travis indicated he understood and signed the *Miranda* waiver form. *See* Government Exhibit #1. Travis made various admissions including that he had gotten the pistol found in the backpack in Arkansas about two years earlier in exchange for car parts. *See* Government Exhibit #2.

Atwood also testified. He is a three-time convicted felon. Atwood has been a daily user of marijuana for 13 years; he started using when he was 16 years old. Although he initially denied being close friends with Travis, Atwood later admitted that Travis is "a close friend" and "a good friend." (Tr. 88.) When asked whether Atwood was not a fan of police, he began his response with "[y]eah, I would—" and then corrected himself saying he doesn't "have a problem with them" although he did some dumb things when he was younger. (Tr. 93.) Additionally, Atwood attempted to avoid answering Deputy Stevens' question regarding the passenger's identity as Atwood didn't "know if [Travis] might have had previous warrants or anything like that." *Id*.

Atwood's testimony was further inconsistent in that he first claimed Deputy Stevens

Page **5** of **10**

told him he saw marijuana on his shirt and pulled him out of the truck for that reason, but then clarified that Stevens' observation of marijuana "was after I went to the back of the car or standing behind my car." (Tr. 82.)  His recollection of what was on his shirt was uncertain. He testified "[i]t looked to me like cigarette ashes or Popeye's Chicken or something just from along the way," later adding "[i]t looked like dust.  It looked like cigarette ash to me." *Id*.  He testified that he "looked at it and then swiped it, and that was it." *Id*.  Atwood could not confirm what color the particles were although he was certain it was not marijuana.  (Tr. 87.)

The Court finds Deputy Stevens' report that he observed marijuana flakes on Atwood's shirt to be credible.  As noted by the Government, Stevens was candid about not smelling an odor of marijuana or seeing any contraband in plain view within the vehicle during the traffic stop.  While Atwood claimed the flakes were really food crumbs or cigarette ash, his statement that he smoked marijuana earlier and the discovery of not just one but two marijuana grinders in the truck, a small baggie of marijuana, plus "Hemparillos" and the rolling platter for marijuana lend greater credibility to Deputy Stevens' experienced observation of marijuana flakes on Atwood's shirt.

Travis requests suppression of the evidence seized from the truck and the statements he made following the traffic stop.

## II.  Conclusions of Law

Travis challenges the officer's search of Atwood's truck.  He argues that the totality of the circumstances surrounding the search would not enable "a reasonable person to believe there is a fair probability that contraband would be found in the vehicle."  Travis does not challenge the validity of the traffic stop.

Page **6** of **10**

The Government frames "[t]he operative issue" in this matter as "did Deputy Stevens' observation of what he immediately recognized as being marijuana particles on [ ] Atwood's shirt, in conjunction with Atwood's admission that he had smoked marijuana earlier, in light of Deputy Stevens' extensive experience and other observations constitute probable cause to believe that contraband or other evidence would be found in the vehicle?" (Doc. 60 at 4.) The Government argues that "it was objectively reasonable for Deputy Stevens, given his observations, training and experience, as well as Atwood's admission that he had smoked marijuana earlier in the evening to conclude that there was probable cause that evidence of that crime would have been found in the vehicle." (Doc. 60 at 9.)

The Court finds the search of the vehicle was according to law and constitutional.

**II.A.   Probable Cause for Search**

Generally, searches conducted without prior approval from a judge are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). The automobile exception to the warrant requirement allows law enforcement to "search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 817 (8th Cir. 2009) (citation omitted).

"Probable cause for an automobile search exists if the facts and circumstances known by the police when they began the search were 'sufficient in themselves' for a person 'of reasonable caution' to believe that contraband or evidence of criminal activity was in the vehicle." *United States v. Caves*, 890 F.2d 87, 89 (8th Cir. 1989) (citations omitted). "The Supreme Court has recognized that the odor of an illegal drug can be highly probative in

Page **7** of **10**

establishing probable cause for a search." *Id*. at 90 (citing *Johnson v. United States*, 333 U.S. 10, 13 (1948)). More recently, the Eighth Circuit noted it has "repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." *United States v. Williams*, 955 F.3d 734, 373 (8th Cir. 2020).

In *United States v. Brown*, 634 F.3d 435 (8th Cir. 2011), two officers noticed the odor of burnt marijuana during a welfare check of a disabled vehicle. Brown was travelling with his girlfriend and a friend, Johan Anderson, who was lying in the backseat of the car. When asked who was smoking marijuana, Anderson admitted that he had been smoking. A search of the car resulted in the discovery of a firearm that belonged to Brown, which Brown sought to suppress. The Eighth Circuit concluded that based on the noticeable odor of marijuana and Anderson's admission that he had been smoking marijuana, "there was a reasonable probability marijuana was located inside the vehicle and the officers had probable cause to search the entire vehicle for illegal drugs." *Id*. at 438.

Similarly, when officers observed an item commonly used in the manufacture of methamphetamine in plain view within a vehicle parked in the driveway of a house where evidence of drug related activity was found, the Eighth Circuit concluded that observation "provided a substantial basis for the conclusion that further contraband or evidence may have been in other parts of the automobile" allowing them "to search the trunk of the automobile and seize the contraband found there." *United States v. Fladten*, 230 F.3d 1083, 1085-86 (8th Cir. 2000) (per curiam)

Travis complains that Deputy Stevens did not attempt to verify whether Atwood and Travis were in the area to purchase a car, that Stevens did not collect the marijuana flakes as evidence, and that Deputy Stevens did not know that CBD and marijuana look the same

Page **8** of **10**

although Deputy Eggers was aware of their similarity.  Evidence was presented showing that Atwood did in fact purchase a car from a Cape Girardeau resident upon his release from jail.  Next, Stevens explained that collecting the marijuana flakes would have been futile as the lab does not test for marijuana and Atwood testified that he brushed them off his shirt.  Third, there is no evidence that the substance on his shirt was CBD and not marijuana.  Atwood's admission that he smoked marijuana earlier further confirmed Stevens' belief that the flakes on Atwood's search were marijuana flakes.  The fact Atwood was telling the truth about the car purchase does not detract from Deputy Stevens' assessment of the circumstances.  "The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999)(citation omitted).

      Deputy Stevens is an experienced and credible law enforcement officer.  On the night in question, he observed a truck with Arkansas plates that had a headlight out after midnight in an area known for drug related activity.  When Stevens asked the driver to step out of the truck, he immediately noticed flakes of marijuana on the driver's shirt.  Stevens had seen the same thing on over 100 prior occasions and explained that it usually happens "when somebody is inside their vehicle and they're either smoking and rolling up either a marijuana cigarette or a marijuana cigar."  (Tr. 12.)  The driver also admitted to smoking marijuana in Arkansas before he and Travis began their trip to Missouri although he denied possessing any at that moment.  These circumstances were sufficient to lead Deputy Stevens to believe that contraband or evidence of criminal activity would be found in the vehicle thereby establishing probable cause for the search.

The search of the truck was according to law and not a violation of Travis' constitutional rights.

**II.B.   Fruit of the Poisonous Tree**

Travis further argues that his confession should be suppressed as "fruit of the poisonous tree." (Doc. 37 at 4-5.) "Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are the items of physical evidence discovered during an illegal search." *United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002). Because the search was justified by the automobile exception, this argument fails.

In consideration of the foregoing analysis, Marks' request for the suppression should be denied.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion to Suppress Evidence and Statements (Doc. 37) be **denied**.

Further, the parties are advised that they have until not later than October 20, 2023, in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of October, 2023.